NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **Civil Action No. 07-4313 (SRC)** |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| MARTIN G. MARGOLIS, | : | |
| | : | |
| Defendant . | : | |
| | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion for summary judgment filed by

Plaintiff United States of America ("the Government") [docket item no. 14].  Defendant Martin

G. Margolis ("Margolis") has opposed the motion and has, moreover, filed a Declaration of

counsel pursuant to Federal Rule 56(f) in response to the motion.  The Court held oral argument

on the motion on August 14, 2008, and then again on October 7, 2008, following supplemental

briefing requested by the Court.  For the reasons discussed below, the Court will grant in part and

deny in part the Government's motion for summary judgment.


I.    **BACKGROUND**

This is an action for the collection of unpaid federal income taxes and unpaid

employment taxes.  At issue are 11 tax liability assessments by the Commissioner of the Internal

Revenue Service ("IRS") against the taxpayer defendant, Margolis, totaling, according to the

Complaint, $1,890,020, plus interest, penalties and costs. The federal income tax assessments relate to the years 1987, 1992, 1995-1998, 2000 and 2004. The IRS also seeks to reduce to judgment personal liability assessments for unpaid trust fund taxes, pursuant to 26 U.S.C. § 6672,[1] which were based on Margolis's alleged failure to collect and pay taxes required to be withheld from wages paid to employees for the tax periods ending March 31, 1992, September 30, 1996 and December 31, 1998.

In late 2001 or early 2002, Margolis made an Offer of Compromise to the IRS with respect to tax liabilities he owed. The IRS rejected this offer but instead proposed an installment agreement for the payment of the tax liabilities. On July 23, 2002, Margolis and the IRS entered into an Installment Agreement (the "Installment Agreement"), which covered all of Margolis's tax liability as of the date of Installment Agreement. The Installment Agreement, in other words, covered ten of the 11 assessments at issue in this action. The Installment Agreement called for monthly payments of $3,500, beginning on July 28, 2002. It also provided, in relevant part, that the IRS could cancel the agreement if Margolis failed to provide updated financial information when requested by the IRS and that, in the event of default under the Installment Agreement, Margolis would have to pay a $24 fee if the Installment Agreement was reinstated. The Installment Agreement stated:

> We may cancel this agreement if you don't give us updated financial information when we ask for it.
>
> * * *
>
> If the agreement defaults, you must pay a $24 reinstatement fee if

---

[1] Title 26 U.S.C. § 6672 imposes personal liability on the individual responsible for collecting income tax and social security withholdings from employees' wages, which the individual must hold in trust for the Government, for a willful failure to collect and pay over the tax.

> agreement is reinstated, which we have authority to deduct from the first
> payment.

(6/18/08 Margolis Decl., Ex. A.)  Margolis made the payments each month as required.

On or about February 20, 2006, the IRS sent Margolis ten separate Notices of Intent to Levy, referencing the tax liability assessments covered by the Installment Agreement.  Each Notice alleged that Margolis had defaulted on the Installment Agreement by failing to provide an updated financial statement as requested by the IRS.  Each one-page Notice contained the following statement:

> This is a formal notice of our intent to terminate your installment
> agreement 30 days from the date of this notice.  You defaulted on your
> agreement because **you didn't provide an updated financial statement
> as we requested**.  The agreement states that we may terminate your
> agreement and collect the entire amount of your tax liability if you don't
> meet all the conditions.  This is your notice, as required by Internal
> Revenue Code Section 6331(d), of our intent to levy (take) any state tax
> refunds to which you may be entitled.  We can also file a Notice of Federal
> Tax Lien, if we haven't already done so.  In addition, we will begin to
> search for other assets we may levy.  To prevent collection action, you
> must **provide us with your updated financial statement**.  We will
> charge a reinstatement fee that we will take from your first payment.  If
> you don't agree with this decision, you have a right to request Appeals
> consideration by calling the number listed below within 30 days from the
> date the agreement is terminated.

(6/18/08 Margolis Decl., Ex. B. (emphasis in original)).  Margolis contends that he had not received a request for updated financial information prior to the Notices of Intent to Levy.  The Government has not provided evidence that earlier requests, prior to the Notices, were sent to Margolis.  Nevertheless, on February 28, 2002, Margolis sent the IRS, via Express Mail, his updated financial statement and a letter requesting that the Installment Agreement be reinstated.  Margolis continued making the payments required under the Installment Agreement for six

3

months following his receipt of the Notices of Intent to Levy.

The IRS contends that the Installment Agreement was terminated on March 22, 2006 (that is, 30 days from the date of the Notices).  The IRS referred the matter to the Department of Justice on August 28, 2007, asking that a civil action pursuant to 26 U.S.C. § 7401 be initiated against Margolis to reduce to judgment the outstanding tax assessments against him.  This lawsuit was filed on September 7, 2007.


II.   DISCUSSION

   A.   Summary Judgment Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus.

4

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at

247-48.  The Supreme Court has held that Rule 56(e) "requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); Big Apple BMW, Inc.

v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)

("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for

item, each piece of evidence proffered by the movant," but  "must exceed the 'mere scintilla'

threshold").

 Rule 56 also contemplates situations in which the record may not be sufficiently

developed to allow the non-moving party to submit a meaningful opposition to the motion for

summary judgment, as required by Rule 56(e).  By "its very nature, the summary judgment

process presupposes the existence of an adequate record." Doe v. Abington Friends Sch., 480

F.3d 252, 257 (3d Cir.2007). If the non-moving party contends that additional discovery is

required, that party must file a motion under Fed.R.Civ.P. 56(f).  Id. (citing Dowling v. City of

Philadelphia, 855 F.2d 136, 139 (3d Cir.1988)).  Rule 56(f) provides

> If a party opposing the [summary judgment] motion shows by affidavit
> that, for specified reasons, it cannot present facts essential to justify its
> opposition, the court may (1) deny the motion; order a continuance to
> enable affidavits to be obtained, depositions to be taken, or other discovery
> to be undertaken; or (3) issue any other just order.

Fed. R. Civ. P. 56(f).  In deciding whether to grant a Rule 56(f) motion, the Court must consider

"what particular information is sought; how, if uncovered, it would preclude summary judgment;

and why it has not been previously obtained." San Filippo v. Bongiovanni, 30 F.3d 424, 432 (3d

Cir.1994).  The decision to grant a Rule 56(f) motion lies in the sole discretion of the district

court.  <u>See</u> <u>id.</u>

    **B.**    **Analysis**

      Margolis makes two related arguments in opposition to the motion for summary

judgment, one focused on the undeveloped record in this case and the other on the existence

questions of material fact.  In the initial briefing, Margolis contended that the motion should be

denied as premature because no discovery has been exchanged in this action.   He filed a

declaration by his counsel, pursuant to Federal Rule of Civil Procedure 56(f), setting forth the

various areas of factual investigation that need to be explored before the Court can properly

evaluate a motion for summary judgment.  Margolis asserted that discovery regarding the

following matters would reveal information that would preclude summary judgment for the

Government: (1) calculations of the assessments, interest and penalties the Government claims

are due; (2) the time bar of the action as to certain of the alleged tax liabilities based on the ten-

year statute of limitations;[2] (3) the Government's evidence in support of the trust fund recovery

penalties it seeks in connection with Margolis's alleged willful failure to collect and pay over

trust fund tax; and (4) the Government's termination of the Installment Agreement.

      Supplemental briefing by the parties has focused the motion on the issue of whether the

IRS breached the Installment Agreement, which subsumed all but one of the tax liability

assessments which the Government seeks to reduce to judgment in this lawsuit.  Margolis argues

that discovery will demonstrate that the IRS wrongfully terminated the Installment Agreement, in

---

     [2] Under 26 U.S.C. § 6501(a) the government may bring suit against a taxpayer "only if the ... proceeding [is] begun within ten years after the assessment of the tax."

contravention of 26 U.S.C. § 6159, and that this wrongful termination precludes the Government from judgment.  The Government, in response, maintains that the termination was proper but argues that even assuming it was not, the breach would be irrelevant to its entitlement to judgment on the tax liabilities alleged in the Complaint.

Installment agreements - that is, agreements between the Secretary of the Treasury Department (the "Secretary") (which oversees the IRS) and a taxpayer for the payment of tax in installments - are governed by 26 U.S.C. § 6159.  According to the statute, the Secretary is authorized to enter into such agreements in his or her discretion.  26 U.S.C. § 6159(a).  Once the agreement has been entered into, however, the statute sets forth certain protections for the taxpayer limiting the Government's ability to terminate it.  Except for certain reasons enumerated in subsection (b) of the statute, an installment agreement "shall remain in effect for the term of the agreement."  26 U.S.C. § 6159(b)(1).  Relevant to the instant motion, the statute provides that the "Secretary may alter, modify, or terminate an [installment] agreement . . . in the case of the failure of the taxpayer . . . to provide a financial condition update as requested by the Secretary."  26 U.S.C. § 6159(b)(4)(C).  Moreover, while an installment agreement is in effect, the IRS may not refer a case to the Department of Justice for the commencement of a civil action regarding the tax liability covered in the installment agreement.  26 U.S.C. § 6331(k)(2)(C) (prohibiting levy to collect tax liability that is the subject of installment agreement during period agreement is in effect); 26 C.F.R. § 301.6331-4(a) (same prohibition on levy); 26 C.F.R. § 301.6331-4(b)(2) (prohibiting referral of a case for litigation against person named in installment agreement if levy prohibited based on existence of installment agreement).

The Government stresses that the Installment Agreement was not in effect when this matter was referred by the IRS to the Department of Justice for the commencement of a civil action.[3]  It maintains that its termination of the agreement for failure by Margolis to provide updated financial information, as requested, was proper under § 6159(b)(4)(C).  The Government further argues that even assuming, for purposes of this summary judgment motion, that termination had been wrongful, the critical and undisputed fact is that no agreement was in effect when the matter was referred for civil litigation.  According to the Government, the taxpayer's recourse, if any, for an alleged wrongful termination would be a claim for damages for unauthorized collection actions, pursuant to 26 U.S.C. § 7433.

The Court finds the Government's argument untenable.  The circumstances under which the Installment Agreement was terminated are material to the Government's entitlement to judgment as a matter of law and have been disputed by Margolis so as to defeat this motion as to those assessments covered by the Installment Agreement.

The evidence presented to the Court shows that the IRS sent Margolis ten Notices of Intent to Levy advising that Margolis had defaulted on the Installment Agreement by failing to provide the requested financial information.  The Court notes that the Government has not

---

[3]  The Government had initially argued that the termination of the Installment Agreement was irrelevant because it could seek judgment on the tax liabilities assessed whether an installment agreement was in effect or not.  It based this argument on the Third Circuit's opinion in United States v. Stinson, 45 Fed.Appx. 201, 204-205 n.5 (3d Cir. 2002), in which the court held that the existence of an installment agreement would not bar the government from bringing an action to reduce outstanding tax liability to judgment.  The Stinson case, however, pre-dates 26 C.F.R. 301.6331-4(b)(2), the federal regulation expressly barring such an action while an installment agreement is in effect.  Stinson's reasoning has been invalidated, and the Government has accordingly revised its argument to focus on the non-existence of an effective installment agreement at the time this matter was referred for civil action.

presented any proof that it had requested the information prior to the Notices.  In any event, the Notices expressly give the taxpayer an opportunity to cure the stated default and prevent termination of the Installment Agreement.  Each Notice advises of the IRS's intent to terminate the Installment Agreement in 30 days due to Magolis's default.  Each Notice states: "To prevent collection action, you must provide us with your updated financial statement.  We will charge a reinstatement fee that we will take from your first payment."  Indeed, this is consonant with the Installment Agreement itself, which suggests that the Government may offer an opportunity to cure: "If the agreement defaults, you must pay a $24 reinstatement fee if agreement is reinstated, which we have authority to deduct from the first payment."  Eight days after receiving the Notices, Margolis sent the IRS the requested information and asked that his Installment Agreement be reinstated.  The Government has not presented evidence that it found Margolis's effort to cure unsatisfactory or that it rejected his request for reinstatement.  Margolis continued to make payments under the Installment Agreement for six months following the Notices.

Margolis has submitted two declarations regarding his compliance with the Installment Agreement, timely response to the Notices of Intent to Levy, effort to cure the default described in the Notices, and express request for reinstatement of the Installment Agreement.  In the Court's view, these statements have raised genuine issues regarding whether the IRS terminated the Installment Agreement in violation of § 6159.  Though the Government notes that the Notices do not affirmatively promise reinstatement, the Court reads the Notices in the light most favorable to the non-movant, to provide the taxpayer an opportunity to cure and for reinstatement upon the taxpayer's cure of the default. The factual question regarding termination is material because the continued existence of the Installment Agreement would have precluded the

Government from pursuing this effort to reduce Margolis's tax liability assessments to judgment.

The Government urges the Court to disregard the circumstances surrounding the termination of the Installment Agreement and focus only on the fact that, rightly or wrongly, the Installment Agreement was not in effect when this matter was referred to the Department of Justice. The Court cannot logically cabin the non-existence of the Installment Agreement from the Government's termination of the Installment Agreement. The Government's position that it could terminate an Installment Agreement at will, proceed to initiate civil litigation against the taxpayer for the tax liabilities that had been covered by the Installment Agreement, and face only the possibility of a suit for damages by the taxpayer under § 7433 as a consequence for any potential violation of § 6159 would render the taxpayer protections of the statutory and regulatory scheme governing installment agreements meaningless.

In short, the Court finds that there is a genuine and material dispute between the parties regarding the propriety of the IRS's termination of the Installment Agreement, the continued viability of which would have foreclosed the Government's claims to reduce to judgment ten of the 11 tax liabilities set forth in the Complaint. In light of this dispute, the Court finds that the Government is not entitled to summary judgment on its claims as to the ten tax liabilities that were covered by the Installment Agreement, specifically, the federal income tax assessments relating to the years 1987, 1992, 1995-1998, 2000 and the trust fund tax assessments for the tax periods ending March 31, 1992, September 30, 1996 and December 31, 1998.

The federal income tax liability relating to 2004, and assessed against Margolis on January 9, 2006, does not appear to be included in the Installment Agreement at issue, or any other installment agreement between Margolis and the IRS. As to this liability, the Government

has met its burden of showing that it is entitled to judgment as a matter of law.  "Assessments are generally presumed valid and establish a prima facie case of liability against a taxpayer."  Freck v. Internal Revenue Service, 37 F.3d 986, 992 n.8 (3d Cir. 1994).  As to the 2004 tax liability assessment, Margolis has not raised any genuine dispute as to its validity or accuracy.  Nor do any of the discovery matters raised in the Rule 56(f) submitted by his counsel bear on the question of whether the Government may seek to enforce payment of this liability.  The claim regarding the 2004 liability, assessed on January 9, 2006, is clearly within the ten-year statute of limitations, and whether termination of the Installment Agreement was wrongful is immaterial because this tax liability assessment was not included in the Installment Agreement.  Thus, the Court grants summary judgment to the Government as to its claim to reduce to judgment the federal income tax, penalties and interest relating to 2004.

The Court notes, finally, that in supplemental briefs and at oral argument, Margolis requested that the Court exercise its equitable powers to order reinstatement of the Installment Agreement.  The Court will not grant his informal application.  Margolis has not pled for such relief, and the Court cannot entertain an application or motion for an order on claims that have not been asserted by a party in the Complaint, or in this instance, in the party's Answer and Counterclaims.

**III.    CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the Government's

motion for summary judgment.  An appropriate form of order will be filed together with this

Opinion.

____ s/ Stanley R. Chesler ____
STANLEY R. CHESLER
United States District Judge

DATED: October 31, 2008

12